May it please the Court, I'm Jeff Hayes, on behalf of plaintiff appellant Michael Leon Seaton. I'd like to begin by focusing on Mr. Seaton's most important argument, and that's his constitutional right to privacy argument. Could you help me on that? Sure. It seems like – it has always seemed to me that there is a serious argument about whether civil commitment for dangerousness of people who've already been convicted and done their time is a reasonable thing to do. In order to do civil commitments constitutionally, there has to be very good information to justify a prediction of future dangerousness, future harm. We're all dangerous to some extent in some way or another, I suppose. I don't see how you could do that fairly if the prosecutor and everybody else involved did not have access to all the medical records. I think that's a fair point, and I think ultimately the point I'm trying to make is that the state has not met its burden to demonstrate that it needs that information. And of course, you cite the fact that of course the state will need certain medical information in order to make a commitment. I would fault somebody who locks somebody up for prediction of future harm without obtaining and looking at that material. Yeah, but that's only one of the factors that the court has to consider. The other factors that the court has to consider to determine whether it's done in a constitutionally permissible manner require a factual inquiry, and of course that didn't happen here because the district court dismissed the case to Esponte. The district court needs to consider, for example, the potential for harm in any subsequent non-consensual disclosure of the information. The district court didn't do that. It didn't consider that information. The state never discussed that. I didn't understand that. Be more concrete about that so I understand what harm you're talking about and what should have been considered. When the state turns over the information to the County of Santa Barbara, there's of course a risk that at some point a state actor or someone else will leak the information to the general public or it will become widely disseminated in the government. If Mr. Seaton, for example, is later not committed or able to go free at some point, if this information is public, it could damage him in some way. I agree it's always a risk. Yeah, it's a risk. Government employees have secret information. Yeah. They have wives and children and whatnot. Yeah, the state is required to consider that interest in determining whether the disclosure is constitutional, and the district court didn't consider that. In addition, another factor that the district court is supposed to consider is the adequacy of safeguards to protect the information that's being disclosed. Of course, the state hasn't met its burden to present any sort of information that there are any safeguards in place to protect the information. So once again, it's just a question that we don't know. There is no obligation. I mean, I agree with you. If something gets around the court system or the DA's office in a small town like mine, word gets around. Nevertheless, don't these people have some obligation to keep it secret, whether they all perform their obligation? Yeah, they certainly have an obligation. We don't know whether they're putting in place adequate safeguards. Some of the case law says that, for example, when these sorts of disclosures have been found to be permitted, they talk about the state keeping the information in rooms with locked doors and behind barbed wires and taking other precautions. We don't know whether these files are sitting somewhere in the county of Santa Barbara on a desk where all government employees can take a look at them or where the public might have access. I'm thinking kind of from the opposite direction. If you don't have the file, then all you've got is some social worker expert witness who testifies that sex offenders are really dangerous and have a very high recidivism rate. And you've got somebody who has, in fact, committed a sex offense, and that's about all the judge has. So the judge says, well, I can't very well expose the public, not knowing any more than that. But to look at the psychiatric record, you might find out that it was some temporary situational problem or there's been some medication change or that it was, for one reason or another, not likely to recur. But you couldn't know that without reading the medical file. Well, I think that if the state hasn't met its burden to show that it needs the medical records, then all the state should have is the testimony of some social worker. Well, let's say, for example, you had somebody who committed a really bad sex offense because he had what was thought to be, say, unipolar depression. It was medicated with SSRIs. Unbeknownst to the doctor or him, he was bipolar. It sent him into a mania. He committed the sex offense in a mania. As soon as you take him off the SSRIs or give him the right medications for bipolar, it's not going to happen again. But unless you can read his medical file, you'll never know it. Yeah, that's potentially true. However, I think the fact of the matter is the state needs to meet its constitutional burden to prove that the disclosure is appropriate. And if it hasn't done that, the state shouldn't be disclosing private medical information. I think it's as simple as that. You know, it may be possible for the state to turn over these records in a way that's constitutionally permissible, but I just don't think we know that at this point. When you say this, you keep saying the state disclosing and then the state meeting. Okay, the state is on both sides. That's correct. So why was the disclosure here anyway? These were records that were maintained by the state, at least to the state. I think that in this case, I think it's pretty clear that the constitutional right to privacy would cover intra-government disclosures. And my authority for that is in Tucson Women's Clinic v. Eden, where it says, and I quote, even if a law adequately protects against public disclosure of a patient's private information, it may still violate informational privacy rights if an unbounded large number of government employees have access to the information. Yeah, but you have the burden of showing that that's happened. And I don't see where that's been alleged. This is not a situation where they put it on their website, on their internal California website. You have knowledge that there's been a disclosure of a huge number of unwanted small allegations like that. The way I read this segment of Tucson Women's Clinic v. Eden is what it's saying is that the fact that the disclosure is from one entity of the government to another entity of the government does not absolve the state of its burden to prove that the constitutional right to privacy. There was not a case involving two entities of the government. That was Tucson Women's Clinic was a private entity. So where do you get this disclosure from one government entity to another? The way I read this. This is 539 again, right? I'm sorry? 539, you're reading a patient? I'm reading 379 F3rd at 551 to 552. Oh, 551 to 552. Where it says that it's not enough for a law to protect against public disclosure, but that the informational right to privacy may be violated if an unbounded large number of government employees have access to the information. I think the state still needs to meet its burden. Where does this deal with the question of whether giving it from one agency to another agency? I think the factual circumstance, you're correct, is slightly different in Tucson Women's Clinic versus Eden, but I think that that principle can stand, that statement from the case can stand for a broader proposition. That's my argument. And if not, you lose? I hope not. Well, no, I'm not saying if you don't buy this argument, you lose. Well, if you don't buy that the constitutional right to privacy covers disclosures from one governmental entity to another, I don't know. That's another case. I think so. You don't have a case that deals with that situation. Not specifically. Now, why is it the state has these records to begin with? I'm sorry? Why is it that the state has these records to begin with? Because it's permitted under California's Sexually Violent Predator Act. No, no. It permits the disclosure. How come the records are with the state to begin with? Because the psychiatric examinations took place while Mr. Seaton was incarcerated. Where does the constitutional right to privacy apply to medical examinations while in prison anyway? Where does it say that? You know, I think that there's some limited constitutional right to privacy. Where? What's your case? Mr. Mumitz can be dealt with a government going in and getting private person's criminal record, medical records with authorization. Okay? What case applies that principle, that privately held medical records, when the government goes in and gets privately held medical records, that there's a constitutional violation, that that applies to records that are developed by the state while the prisoner is in state custody? You understand the differences, of course. This is not like going to your private doctor. You know, you choose your private doctor. Presumably the women, the patients of the Tucson Women's Clinic chose that as their private care provider. And they chose to disclose or not disclose and have, you know, the sort of normal interaction one has with doctors. Prisons are different. They take you to the prison doctor or they don't take you to the prison doctor if they don't want to. They can force you to be medicated. There are all sorts of stuff that happens that's entirely non-consensual in prison. Where does this constitutional right to the privacy of prison records, what authority is it that that applies? I'm sorry. The principle that there is a constitutional right to medical records, which case applies that to prison records? I'm not sure I have the answer to your case. And I see I'm not sure I have the case that you want. And I see I'm running out of time. I would, however, like to make just a couple of brief points before I sit down. The first is I'd like to point out that Mr. Seaton has served his prison time. He is not yet civilly committed. He is, in fact, detaining, awaiting civil commitments. So I think that he does have a certain right to privacy that certainly would be greater than in the prison context. Would he be entitled to privacy if, for example, he put on a defensive trial of mental incapacity and there were experts, medical experts, that came in and testified that he is nuts, and then there were medical experts testifying on the prosecution side saying, no, he's perfectly sane, and then the court ordered a competency examination and then had a report given to the court? Would all of those records be subject to this constitutional right as well? I think they might be if the state had medics' version of proof that it weighed the five factors and found that it was permissible to disclose the information. I asked you, I gave you a hypothetical question a few minutes ago that was quite concrete, where disclosure of the records would show that it was, in fact, the medication that caused the sexual misconduct. It was a iatrogenic crime. Now I want to ask you more generally how you reconcile your position with Whalen. It looks as though under both Whalen and also the women's clinic case, as though the court was pretty careful to carve out room where, even if it is confidential medical records, even if it's private medical records, if the interest in secrecy is not like an interest in freedom of speech where you need a compelling state interest, it's just a balanced interest of some sort. How do you reconcile your position with Whalen? My position is not that there is no circumstance where the release of these medical informations would be constitutional. My position is that I don't think the state has done anything to meet its burden in this case. The state hasn't presented any evidence. The state hasn't been involved in this case until on appeal. The case was dismissed to a sponte by the district court judge. And I think as I've said in my briefs that- Why wouldn't that be your burden? I'm sorry? Why wouldn't that be your burden? I could see a problem if the state was putting all the private visits to a doctor by somebody who was worried about his sexual feelings on the Internet. But here it's just kind of a general challenge. Did you repeat the question one more time? I'm not sure I- Why wouldn't it be your burden rather than the state's burden? Your burden to show inappropriate dissemination rather than the state's burden to show the avoidance of it. Because I think it's always the state's burden to prove that it has met the constitutional requirements for disclosure of the information. That's all. Thanks. Okay. Thank you. We'll hear from the other side. May it please the court. I'm Eric Bates, Deputy Attorney General on behalf of the appellees. In the matter known for the court, the appellant seeks to have the court establish privacy rights for information that was mandated to be provided under the Welfare and Institutions Code, Section 6600, also known as the Sexually Violent Predators Act. However, I think it's important to note that this was information that was being used to specifically determine whether or not a person was a sexually violent predator. It was not information that an ordinary citizen would seek to protect, such as blood test results or a physical examination result. This was information used to determine if someone who has already been committed. I can see where a person might have a real interest in privacy. Suppose a person had started being upset when they were teenagers about disturbing sexual fantasies and desires and repeatedly obtained medical help and counseling to deal with them. And then, bam, all of a sudden it's in the whole DA's office and everybody's spouse and secretary's spouse and whatnot is hearing glimmers of it. Well, Your Honor, I think obviously I think that would be relevant for a psychologist to look at during the commitment proceeding and then provide that to the District Attorney's Office and provide that as part of evidence to determine if this person should be released from prison after having these convictions, to be released in the community, or should be sent to a mental hospital for treatment. As the Court mentioned earlier, So now you're back to balancing. Yes, correct, Your Honor. And as the Court mentioned in Waylon, You're not saying there's no interest in the privacy and no constitutional interest in the secrecy of at least private medical records? No, I'm not saying there's no interest at all, Your Honor. I believe as the courts historically have determined that there are privacy rights in such information. But in balancing against the State's interest, Even prison medical records? I would submit to the Court that even those situations are still a balancing. Is there still a constitutional interest in privacy there? I mean, you don't even have an interest in privacy when you go to the toilet in prison. I wish I had a specific answer for the Court, Your Honor. I do not know specifically what those prison cases have specifically said regarding balancing. The cases that I've come across, there has been a balancing of individuals' interest versus the State's interest to protect its citizens. And courts have fallen on the side of the State. What I was going to say, Waylon specifically says that Well, but you have nothing to balance here because the State hasn't appeared to make any showing. So if you concede balancing, then you lose. No, I'm not conceding You might as well sit down and we'll go on to the next case because there's nothing you have presented to balance against. Well, I'm not conceding that there's How can you balance? Have you filed an answer? No, Your Honor. Have you presented affidavits? No, I'm saying So how can you balance? I'm saying the District Court, in using its screening process pursuant to Title 28 You don't have evidence to balance. You can't balance something against nothing. I would submit to the Court that the District Court balanced the established Welfare and Institutions Code, Section 6600, which contemplates having this specific medical information and determining whether or not someone should be released. That that has already been decided in the Code and that the Court felt that the State, with that statute in place, has a compelling interest to protect its citizens against individuals who may be dangerous. Counsel Ms. Burton Oh, sorry. Go ahead. What's your response to opposing counsel's point that there was no showing of safeguards that would prevent the impermissible viewing of these records? Your Honor, I think that can be addressed on two issues. One, I think there's always that inherent issue with a doctor-patient situation that information can be released. We rely on doctors withholding and keeping that information safe, also because they have ethical obligations. But these are doctors. These are government workers. No, Your Honor. These are actual psychologists and psychiatrists. But I thought you said the information would go to the DA's office. Correct. Okay. So when it goes to the DA's office, the information is not under the rubric of the doctor. So how do you safeguard the clerks and the investigators and all of the people who work in the DA's office from access to and disclosure of that information? Your Honor, I believe it would fall under the same guidelines and restrictions and safeguards that the DA's office have regarding production of witness names or, in sexual crimes, the victim's names. Situations such as that. We don't know what those are. We don't have any evidence because you haven't presented anything. Maybe you could tell us something about whose burden it is to show either that there are or that there are not adequate safeguards with a citation to some authority. Yes. In Whalen, as the Court noted, Whalen states that there's no support in the record for an assumption that the security provisions of a statute will be administered improperly. That that's no reason to attack a statute on its face because of the mere possibility of a provision, I'm sorry, of a security breach, for lack of a better term. So is your argument that there are security provisions in the statute already? Yes, Your Honor. There are provisions that require the doctors to do the evaluations and then provide that information solely to the district attorney's office handling the commitment proceeding. And what are the security provisions in the statute that govern the DA's office once the information is turned over to the DA's office? That I do not know, Your Honor, and I don't know if it's actually written in the statute specifically as to what the DA's office is supposed to do, Your Honor. Well, why haven't you not, then, failed to meet your burden? You haven't presented any evidence. You haven't pointed to any law. Well, again, Your Honor, I don't believe it. I'm sorry. Why don't you just lose, then? I don't believe it's the State's burden at this point. I believe that the district attorney's office... You said there's a balancing. You stood there and you said there's a balancing, okay? Correct. So something has to balance. They have presented something on their side. You presented nothing on your side. You said there's a balancing. I tried to get you to say, no, this does not apply to prison records, but you wouldn't go for that. You insisted on going your way, so that's fine. So that's where we are. I'm not going to agree to something like that, Your Honor. If you're in balancing territory, why isn't the fact that you haven't presented anything to balance fated to your case? And you have to go back to the place where balancing is done, which is the district court. Your Honor, I think it all hinges on the reason why the district court dismissed the First Amendment complaint. I believe the district court looked to see if there was a balancing involved here. Yeah, but we review and we see there's no balance. The district court may have thought there was something on the other side of the balance, but you're here to tell us why there was, and you haven't said a thing. I mean, you said there may be some procedures in place. I don't know what they are. Maybe there's a statute, but there's nothing in the record about the procedures. The statute doesn't provide any procedures, any safeguards. You haven't, you know, and there's no evidence because you didn't present anything below. So it seems to me what you're doing is you're asking to go back to the district court where you can make that showing. That's what I hear you saying. I would respectfully not agree with the court. That's not what I'm saying. That's not what I'm going to continue to say if that's the way it's coming across your honor. In Whalen, the court went on in some way about the locked wire fence and the alarm system and the computer tapes in a locked cabinet and the computer offline and prohibitions of disclosures and all that. Now, I still doubt if it works in a small town that people are going to leave. For example, we all know lots and lots about Sarah Palin's daughter's sex life. Nevertheless, I can't tell whether in Whalen that was a condition of their saying it was okay or whether it was just bolstering. I'm not clear on whose burden it is to show all this attempt to protect secrecy. I'm not sure either, Your Honor. I think the fact that Whalen says that the mere possibility of a security situation should not be the cause for rendering a statute invalid, and I think that's the situation that the appellants are trying to raise here, that the mere fact that Mr. Seaton may not be committed, that he may have sensitive information such as an AIDS situation, because that could possibly be released, that that would be a reason to find that there is a warrant for privacy rights regarding this information. If the Court does not have any other questions, I will conclude by saying that I believe this Court found that there was a valid reason to dismiss the First Amendment complaint based upon the established case law as well as the statutory law. Thank you.
judges: Kozinski, Kleinfeld, Rawlinson